1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| THOMAS HUGHES, | / | 1:06-cv-01525-LJO-SMS (PC) |
| | / | |
| Plaintiff, | / | |
| | / | ORDER DISMISSING COMPLAINT |
| v. | / | WITH LEAVE TO AMEND |
| | / | |
| COALINGA STATE HOSPITAL, et. al., | / | |
| | / | (Doc. 1) |
| Defendants. | / | |
| _____ | / | |

## I.  SCREENING ORDER

_____Thomas Hughes ("Plaintiff") is a civil detainee proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed his complaint on October 30, 2006.

### A.  Screening Requirement

 "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).  A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that Plaintiff can prove no set of facts in support

1

of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S.

69, 73 (1984), *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt

Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

**B.      Summary of Plaintiff's First Amended Complaint**

It appears that all of Plaintiff's allegations pertain to his medical care (or lack thereof)

while housed at Coalinga State Hospital ("CSH").  Plaintiff names as defendants: Coalinga State

Hospital, as an entity, and California Department of Corrections Officers, John/Jane Does 1-5 in

their individual capacities.

Plaintiff complains of essentially three instances.  Generally Plaintiff alleges that: in the

1980's and 1990's he was diagnosed with a variety of gastrointestinal diseases/disorders and

Chronic Obstructive Pulmonary Disorder – all of which have continued to the date of filing his

complaint; he arrived at CSH on April 4, 2006; and that subsequent to eating he suffers from

severe abdominal distention, difficulty breathing, and pain.

In the first instance, Plaintiff alleges that:  on June 20, 2006, "Dr. Johnny Dang

('Defendant Dang')" examined Plaintiff while he was suffering from these complaints, when he

summoned the Chief Medical officer at CSH to witness Plaintiff's condition; that an ambulance

was summoned, but Plaintiff's complaints resolved prior to the arrival of the ambulance such that

Plaintiff remained at CSH; subsequently the Lead Psychiatric Technician ("Billy") became upset

that Plaintiff had not been transferred for testing, requested Plaintiff's consent to testing (which

was granted); Billy contacted a physician who ordered Plaintiff's transfer for testing via

ambulance; the order was subsequently cancelled by an administrative or medical officer who

never examined Plaintiff; Plaintiff's abdomen again became severely distended that evening,

such that Plaintiff was placed in a hot bath with compresses to relive his condition; after being

removed from the bath, Plaintiff's condition worsened such that he was taken to receiving and

release for transport; a transport car had been summoned, but due to his condition and the seating

arrangements therein, the car was not used and an ambulance was summoned; Plaintiff refused to

be transported barefoot and did not go to the medical appointment; that on June 9, 2006 Plaintiff

was to be transported to Coalinga Regional Medical Center ("CRMC") "CDC officers" placed

him in restraints with a padlock in back, despite requests from medical personnel that the padlock be placed in front to alleviate some discomfort;  "the CDC officer" also placed him on the gurney in an uncomfortable and painful position; and as a result, Plaintiff experienced increased pain and difficulty breathing such that the ambulance driver began to speed, but was directed to slow for the "chase car."

In the second instance, Plaintiff alleges that:  on July 27, 2006, he had an upper G.I. at a local hospital with findings of possible tumors and an abundance of acid secretions on his right side; he needs an endoscopy for biopsies; CSH has no contract with a gastrointerologist and is looking for one to perform the requisite procedures; there is no relief for his condition until the biopsies are taken; the diet he is given is legally sufficient, but does nothing to enhance or maintain his quality of life; Dr. Hamrick has told Plaintiff that his possible abdominal tumor has nothing to do with his abdominal distensions and that his condition is an enigma or anomaly, that they know where it is, but not what it is; and Plaintiff has been conducting a hunger strike since August 10, 2006 in an effort to receive some form or relief for his condition.

In the third instance, Plaintiff alleges that; on July 9, 2006, his condition once again became acute such that Psychiatric Technician Baldazar requested and received approval from the "Shift Supervisor" to provide Plaintiff with a 30 minute hot shower; after the shower, Plaintiff's lower abdomen remained extremely distended and was cramping; Plaintiff requested medication ("Dicylomine") from Nurse "Debbie;" Plaintiff was informed that the medication had been discontinued; Plaintiff rested for approximately two hours to relieve the cramps; subsequently, Dr. Hamrick advised Plaintiff that the medication had been discontinued due to severe side effects (which Plaintiff was unaware of); he again became distended subsequent to dinner, and was offered, but refused a shower; late that same night, Nurse "Mary Lou" told Plaintiff he needed to eat small amounts of food every four hours and gave him some graham crackers and a granola bar; Plaintiff again became distended and declined a shower when offered; Plaintiff became distended the next day, but had to wait 30 minutes to take a shower when requested due to the male officer working with another inmate; Plaintiff went to bed in the fetal position and slept for approximately two hours; and on July 11, 2006, shift supervisor, Connie

Havier, advised Plaintiff of an appointment for an upper GI and small bowel exam which "was cancelled due to negligence" as Plaintiff had not been appropriately "prepped" for the procedure.

Plaintiff presents his claims via three declarations (which he entitles "Exhibits") which are attached to his complaint. The Court notes that Plaintiff presents his three "claims" in general renditions of semi-chronological events. Plaintiff fails to allege which actions he feels amounted to violations of his constitutional rights, and fails to specify which defendants he feels were responsible for any such violations.

While Plaintiff may be able to state cognizable claims, the Court, is unable to find that Plaintiff's complaint states any cognizable claim(s) for relief against any defendant(s) at this time. The Court provides Plaintiff with the following law that might apply to his generalized claims. The legal standards provided below are not intended to be an exhaustive list of claims that Plaintiff may or may not raise in an amended complaint. It is Plaintiff's duty to specify his claims for relief and their factual basis against each named defendant. The Court will not guess as to which facts Plaintiff might believe support which of his claimed constitutional violations against any given defendant.

**C.    Pleading Requirements**

*1. Rule 8(a)*

A plaintiff's complaint **must** satisfy the requirement of Federal Rule of Civil Procedure 8(a), which calls for a "*short and plain* statement of the claim showing that the pleader is entitled to relief." Rule 8(a) expresses the principle of notice-pleading, whereby the pleader need only give the opposing party fair notice of a claim. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). Rule 8(a) does not require an elaborate recitation of every fact a plaintiff may ultimately rely upon at trial, but only a statement sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Id</u>. at 47. However, while detailed allegations are not required, Plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007) (internal quotations and citations omitted). Although accepted as true, the "[f]actual allegations must be

4

[sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citations omitted).

In his amended complaint, Plaintiff is urged to list each claim separately and provide a brief statement of facts indicating what acts or omissions he attributes to each defendant that allegedly violated his constitutional rights.  Plaintiff should complete the form complaint as completely as possible, attaching as the minimum number of additional pages as required to state his claims.  Any additional pages should be identified as additional pages to his amended complaint rather than as exhibits.

### a. Exhibits

Plaintiff is advised that the Court is not a repository for the parties' evidence.  Originals, or copies of evidence (i.e., prison or medical records, witness affidavits, etc.) need not be submitted until the course of litigation brings the evidence into question (for example, on a motion for summary judgment, at trial, or when requested by the Court).  At this point, the submission of evidence is premature as Plaintiff is only required to state a prima facie claim for relief.  Thus, in amending his complaint, Plaintiff would do well to simply state the facts upon which he alleges a defendant has violated his constitutional rights and refrain from submitting exhibits.

If Plaintiff feels compelled to submit exhibits with his amended complaint, he is reminded that such exhibits must be attached to the complaint and must be incorporated by reference.  Fed. R. Civ. Pro. 10(c).  With regard to exhibits that are properly attached to the complaint, Plaintiff is cautioned that it is the Court's duty to evaluate the factual allegations within a complaint, not to wade through exhibits, to determine whether cognizable claims have been stated.

If Plaintiff attaches exhibits to his amended complaint, each exhibit must be specifically referenced.  For example, Plaintiff must state "see Exhibit A" or something similar in order to direct the Court to the specific exhibit Plaintiff is referencing.  Further, if the exhibit consists of more than one page, Plaintiff must reference the specific page of the exhibit (i.e. "See Exhibit A, page 3").  Finally, the Court reminds Plaintiff that the Court must assume that Plaintiff's factual

allegations are true.  Therefore, it is generally unnecessary for Plaintiff to submit exhibits in support of the allegations in a complaint.

### 2.  Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v.  Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  In order to state a claim for relief under section 1983, plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.

Plaintiff's complaint fails to link any named defendant(s) to the allegedly unconstitutional acts or omissions.  The only defendants Plaintiff names in his caption, and on page three of the form complaint are CSH and CDC Officers John/Jane Does 1-5.  Plaintiff identifies and refers to the names of a number of prison staff in his rendition of events, whom he did not name as defendants.  Further, on page 6 of his complaint, Plaintiff refers to "Dr. Johnny Dang (hereinafter Defendant Dang)."  However, Plaintiff failed to name Dr. Johnny Dang as a defendant in his caption or on page three of the form complaint.  Additionally, Plaintiff refers variously to "the CDC officers" and "the CDC officer" without distinction.  If Plaintiff intends to pursue CDC officers and/or staff whose names he does not know, he must identify them with as much detail as possible and link them as a Doe defendant (i.e. "Doe 1") to the offending allegations.  Generally naming Does, without linking them to any offending allegations is insufficient to place

6

1   any subsequently identified defendant on notice as to what actions (or inactions) Plaintiff feels

2   they engaged in that violated Plaintiff's constitutional rights.  Plaintiff need not set forth lengthy

3   allegations, but must link all persons he intends to pursue as defendants to the offending

4   allegations and identify more precisely the basis for the imposition of liability, as set forth herein.

5                    ***a. Municipal Liability – Defendant CSH***

6            Plaintiff names defendant CSH for failing to provide adequate medical care and treatment

7   for his gastrointestinal condition.

8            A local government entity is liable under § 1983 when 'action pursuant to official

9   municipal policy of some nature cause[s] a constitutional tort.' " Oviatt v. Pearce, 954 F.2d 1470,

10  1473-74 (9th Cir.1992) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, (1978)).  In

11  addition, a local governmental entity may be liable if it has a "policy of inaction and such

12  inaction amounts to a failure to protect constitutional rights." Id. at 1474 (citing City of Canton v.

13  Harris, 489 U.S. 378, 388 (1989)); see also Monell, 436 U.S. at 690-91.  The custom or policy of

14  inaction, however, must be the result of a "conscious," City of Canton, 489 U.S. at 389, or "

15  'deliberate choice to follow a course of action ... made from among various alternatives by the

16  official or officials responsible for establishing final policy with respect to the subject matter in

17  question.' " Oviatt, 954 F.2d at 1477 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483-

18  84 (1986) (plurality opinion)).

19           Plaintiff fails to allege any facts as to a CSH custom, or policy, under which any of the

20  defendants were acting.  If Plaintiff is attempting to impose liability on CSH as an entity, rather

21  than the individual CSH staff responsible for his medical care and treatment, Plaintiff must allege

22  some facts linking CSH to the violation complained of (e.g., a policy or practice, etc.)  As it

23  stands, Plaintiff's allegations do not support a claim against CSH for the conditions complained

24  of arising out of his medical care and treatment (or lack thereof).

25       **D.   Legal Standards**

26                    ***1. Deliberate Indifference to Serious Medical Needs***

27           All of Plaintiff's claims appear to relate to inadequate medical care and treatment for his

28  gastrointestinal condition.

Where a prisoner's Eighth Amendment claim is one of inadequate medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. at 106. Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1991). A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994).

If a prisoner establishes the existence of a serious medical need, he or she must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir.1988). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980) (citing Estelle, 429 U.S. at 105-06). See also Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir.2004). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319). "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting

8

1   Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not,

2   then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id.

3   (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

4          Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S.

5   at 104-05.  Deliberate indifference can be manifested by prison guards intentionally denying or

6   delaying access to medical care or intentionally interfering with the treatment once prescribed.

7   Estelle v. Gamble, 429 U.S. at 104-05.  To establish a claim of deliberate indifference arising

8   from delay, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056,

9   1057 (9th Cir.1994) (per curiam); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d

10  1332, 1335 (9th Cir.1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.1989); Shapley v.

11  Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985) (per curiam).  Mere

12  differences of opinion between a prisoner and prison medical staff as to proper medical care do

13  not give rise to a § 1983 claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996);

14  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989); Franklin v. Oregon, 662 F.2d 1337, 1334 (9th

15  Cir.1981).

16         Plaintiff has certainly established the fact that his gastrointestinal condition is a serious

17  medical need.  However, Plaintiff fails to establish that any personnel at CSH acted with

18  deliberate indifference in relation thereto.  Plaintiff fails to show that any indifference to his

19  medical needs was anything more than "[m]ere 'indifference,' 'negligence,' or 'medical

20  malpractice' [which] will not support this cause of action."

21         Specifically as to the first instance, Plaintiff alleges that he was examined by "Dr. Johnny

22  Dang ('Defendant Dang')" who summoned the Chief Medical officer at CSH to witness

23  Plaintiff's condition and that an ambulance was summoned, but Plaintiff's complaints resolved

24  prior to the arrival of the ambulance such that Plaintiff remained at CSH.  The Psychiatric

25  Technician's ("BILLY") upset over Plaintiff not being transported and testing does not show

26  deliberate indifference on the part of any medical provider.  The cancellation of an order Billy

27  secured from a physician for Plaintiff's transfer for testing via ambulance which was cancelled

28  also does not show deliberate indifference.  Plaintiff's distension returned and he was placed in a

hot bath with compresses, but subsequently worsened again.  A transport car was summoned, but due to his condition and the seating arrangements therein, the car was not used and an ambulance was summoned; "the officer" that arrived to place Plaintiff in arm and leg restraints was visibly upset, and ordered Plaintiff to remove his shoes for transport barefoot or in thongs, yet Plaintiff refused to be transported barefoot and did not go to the medical appointment.  This lack of transport for further medical care appears related to Plaintiff's own refusal to be transported barefoot or in thongs – not to deliberate indifference on the part of any prison staff.

Plaintiff alleges that prison staff placed him in restraints with a padlock in back, despite requests from medical personnel that the padlock be placed in front to alleviate some discomfort and that he was placed on the gurney in the most uncomfortable and painful position possible. The fact that Plaintiff, and his restraints, could have been placed in a more comfortable position does not make the actions by the CDC officer rise to the level of deliberate indifference to Plaintiff's serious medical condition.

In the second instance, Plaintiff admits that Dr. Hamrick has told Plaintiff that his possible abdominal tumor has nothing to do with his abdominal distensions and that his condition is an enigma or anomaly, that they know where it is, but not what it is.  The inability of CSH medical personnel to accurately diagnose Plaintiff's condition does not make the actions of the medical providers at CSH rise to the level of deliberate indifference to Plaintiff's serious medical condition.

In the third instance, Plaintiff alleges that the medication he had previously received was discontinued due to serious side effects that Plaintiff had not been advised of.  Plaintiff fails to state whether he is upset over no longer being able to obtain the medication, or if he is upset over having ingested the medication in the first place.  Plaintiff further fails to allege whether he suffered from any of the "serious side effects" it was known to cause.  Further, Plaintiff alleges that an appointment for an upper GI and small bowel exam "was cancelled due to negligence" as he had not been appropriately "prepped" for the procedure.  Negligence by medical staff does not rise to the level of deliberate indifference.

## II.   <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's complaint is dismissed, with leave to file an amended complaint within thirty days.  If Plaintiff needs an extension of time to comply with this order, plaintiff shall file a motion seeking an extension of time no later than thirty days from the date of service of this order.

Plaintiff must demonstrate in his complaint how the conditions complained of have resulted in a deprivation of his constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff is reminded that Fed.R.Civ.P. 18(a) provides that "'[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.'  Thus, multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.  28 U.S.C. § 1915(g)."  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff is advised that the Court cannot serve as a repository for the parties' evidence. Originals or copies of evidence (i.e., prison or medical records, witness affidavits, etc.) should not be submitted until the course of litigation brings the evidence into question (for example, on a motion for summary judgment, at trial, or when requested by the court).  At this point, the submission of evidence is premature as Plaintiff is only required to state a prima facie claim for relief.  Thus, in amending his complaint, Plaintiff should simply state the facts upon which he alleges a defendant has violated his constitutional rights and refrain from submitting exhibits.

11

Finally, Plaintiff is advised that Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once Plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Plaintiff's amended complaint, should he choose to file one, must be clearly and boldly titled "FIRST AMENDED COMPLAINT," reference the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1.      Plaintiff's complaint is dismissed, with leave to amend;

2.      The Clerk's Office shall send Plaintiff a civil rights complaint form;

3.      Within **thirty (30) days** from the date of service of this order, Plaintiff must file an amended complaint curing the deficiencies identified by the court in this order; and

4.      If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a cognizable claim.

IT IS SO ORDERED.

**Dated:    October 2, 2008               /s/ Sandra M. Snyder            **
                                         UNITED STATES MAGISTRATE JUDGE